UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

    -against-                    13 Cr. 242 (SAS)

HARANAKK DINGLE

                                **Filed ECF**

        Defendant
------------------------------------------------------x


## DEFENDANT HARANAKK DINGLE'S
## SUPPLEMENTAL SENTENCING MEMORANDUM


                                          Winston Lee, Esq.
                                          20 Vesey Street, Suite 400
                                          New York, New York  10007
                                          (212)267-1911
                                          *Attorney for Defendant*
                                          *Haranakk Dingle*

**WINSTON LEE**
**ATTORNEY AT LAW**
**20 VESEY STREET ~ SUITE 400**
**NEW YORK, NEW YORK 10007**
Tel. (212)267-1911
Fax. (212)964-2926

May 21, 2015

Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York        **Filed ECF**
500 Pearl Street
New York, New York  10007

Re:   United States v. Haranakk Dingle
      13 Cr. 242 (SAS)

Dear Judge Scheindlin:

      I write as counsel for Mr. Haranakk Dingle, who is scheduled to be sentenced on May 28, 2015.

## INTRODUCTION

      This supplemental sentencing memorandum is submitted to set forth additional arguments regarding the two following issues:

1.   (a) Why this Court should conclude that Mr. Dingle's two year state prison sentence for admittedly relevant conduct is "undischarged" within the meaning of §5G1.3(b) of the United States Sentencing Guidelines ("U.S.S.G.") and that therefore, his federal sentence should be "adjusted" by two years, pursuant to §5G1.3(b).

   (b) In the alternative, even if this Court concludes that Mr. Dingle's state prison sentence is "discharged" within the meaning of §5G1.3(b), this Court should adjust Mr. Dingle's federal sentence (to the extent that it may exceed the mandatory minimum sentence of 60 months incarceration) by the two years he has served on his state prison sentence for relevant conduct, pursuant to U.S.S.G. §§ §5G 1.3, Application Note 4 and 5K2.23.

2.   The directive of 18 U.S.C. § 3553(a) that this Court avoid unwarranted sentence disparities among similarly situated defendants, strongly supports both the defendant's and the Government's recommendation that Mr. Dingle receive a sentence of 60 - 63 months, which would be similar to the 60 month sentence imposed upon Jose Aviles.

## ARGUMENTS

**1(a)    This Court should conclude that Mr. Dingle's two year state prison sentence for admittedly relevant conduct is "undischarged" within the meaning of U.S.S.G. §5G1.3(b) and that therefore, his federal sentence should be "adjusted" by two years, pursuant to §5G1.3(b).**

Section 5G 1.3(b) states:

If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense and that was a basis for an increase in the offense level for the instant offense, the sentence for the instant offense shall be imposed as follows:

(1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2)    the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

Pursuant to 18 U.S.C. § 3585(b), the Bureau of Prisons is forbidden from giving Mr. Dingle credit for pre-sentence custody when that time will be applied against another sentence as in the case of a federal defendant serving a state prison sentence.

The purpose of § 5G 1.3(b) adjustment is "to attempt to achieve some coordination of sentences with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time. ( i.e., had all of the offenses been prosecuted in a single proceeding)." *United States v. Rivers,* 329 F.3d 11 9, 12 1 (2nd Cir. 2002)(quoting *Witte v. United States,* 515 U.S. 389, 404-05 ( 1995)).

<u>Mr. Dingle's is Still in State Custody for his State Prison Sentence For Relevant Conduct</u>

In June 17, 2013, Mr. Dingle was convicted in Bronx Supreme Court (under Indictment

Hon. Shira A. Scheindlin  United States v. Haranakk Dingle
May 21, 2015  13 Cr. 242 (SAS)
Page (3) Three

No. 3380-2011 and Indictment No. 3927-2011) of Attempted Criminal Sale of a Controlled Substance in the Third Degree. Mr. Dingle received a sentence of two years imprisonment on each indictment, those sentences to run concurrent with each other. The parties' plea agreement stipulates these sentences are for relevant conduct to the instant offense.

On August 16, 2013, Mr. Dingle was transferred from The Ulster County State Correctional Facility (where he was serving his state prison sentence) to the Southern District of New York for prosecution on the instant case pursuant to a federal writ ad prosecutum.

As the Court is aware, when Mr. Dingle was transferred from The Ulster County State Correctional Facility to the Southern District of New York for prosecution on the instant case, the state authorities, as the sovereign which first arrested Mr. Dingle, retained primary jurisdiction or custody over Mr. Dingle. Consequently, for sentencing and jail credit purposes, Mr. Dingle is presently in state custody, and federal custody of Mr. Dingle will not commence until such time that: (1) the state authorities formally discharge Mr. Dingle from his state sentence and; (2) the state authorities lift the state detainer and relinquish custody of Mr. Dingle to the federal Bureau of Prisons.

I have conferred with The United States Marshals Service in the Southern District of New and the Inmate Records Coordinator for The Ulster County State Correctional Facility. Both entities have confirmed the following:

(i)  that a state detainer for Mr. Dingle is presently lodged with the federal Bureau of Prisons;

(ii) that after this Court imposes sentence upon Mr. Dingle, he will be returned to the custody of the state correctional authorities, pursuant to the state detainer;

(iii) that after Mr. Dingle is returned to the state correctional authorities, they will conduct a formal review of his entire file and make final computations regarding his state prison sentence. The state correctional authorities will make final determinations regarding, among other things: (1) any term of imprisonment to be credited to the state sentence; (2) any term of imprisonment remaining on the state sentence; (3) the maximum expiration date on the state sentence, and; (4) the dates of Mr. Dingle's post release supervision for the state sentence (which could extend into mid 2016).

(iv) that if Mr. Dingle's state prison term of incarceration is formally determined to have been discharged, the state authorities will lift the state detainer and

      relinquish custody of Mr. Dingle to the federal Bureau of Prisons to begin serving his federal sentence.

(v)     that before Mr. Dingle's obligation on the state sentence is formally discharged, he must "sign out" with the state authorities, which in effect constitutes his agreement with the state correctional authority's final computations regarding his sentence.

Discussion

As set forth above, there has not yet been any final determination that Mr. Dingle's state sentence has been discharged. Consequently, Mr. Dingle presently remains subject to his state sentence and the state authorities have not yet determined whether to release him to the federal Bureau of Prisons to commence service of his federal sentence. Moreover, Mr. Dingle has yet to "sign out" and in effect agree to any final computations by the state correctional authorities.

Accordingly, this Court should conclude that Mr. Dingle's two year state prison sentence for relevant conduct to the instant offense remains "undischarged" within the meaning of §5G1.3(b) and that accordingly, his federal sentence should be "adjusted" by two years.

Such a conclusion by the Court will implement the purposes and fairness considerations intended by §5G1.3(b), and is consistent with the plain language of the Guideline.

**1(b)**     **In the alternative, even if this Court concludes that Mr. Dingle's state prison sentence is "discharged" within the meaning of §5G1.3(b), this Court should adjust the Mr. Dingle's federal sentence (to the extent that it may exceed the mandatory minimum sentence of 60 months incarceration) by the two years he has served on his state prison sentence for relevant conduct, pursuant to U.S.S.G. §5G 1.3, Application Note 4 and § 5K2.23**

If the Court concludes that Mr. Dingle's two year state sentences have been discharged within the meaning of 5G1.3, it should still credit Mr. Dingle with the time he served on his state sentence for relevant conduct to the extent that the total aggregate does not fall below the mandatory minimum sentence of 60 months incarceration required by Title 21 United States Code Section 841(b)(1)(B). See United States v. Lucas, 745 F.3d 626, 630 n.5 (2d Cir. 2014).

Hon. Shira A. Scheindlin  
May 21, 2015  
Page (5) Five

United States v. Haranakk Dingle  
13 Cr. 242 (SAS)

  I respectfully submit that it would be manifestly unjust and unreasonable that he should not receive an adjustment to his federal sentence (which he would have received under U.S.S.G. 5G1.3) merely because he completed his state sentence for relevant conduct before he could be sentenced on the instant case.

  By applying U.S.S.G. § 5K2.23 and §5G 1.3, Application Note 4 to adjust Mr. Dingle's federal sentence to account for his discharged state sentence, this Court will assure that Mr. Dingle is not subjected to duplicative and significant additional punishment for the same criminal conduct and that the total term of imprisonment for the instant offense will not exceed what Mr. Dingle would have received had he been prosecuted for all the conduct in a single proceeding. As stated above, Mr. Dingle's total term of imprisonment should not turn on when the federal government chose to prosecute him on the instant case and the fortuitous fact that his two year state sentence for relevant conduct was completed before he could be sentenced in this case. See United States v. Dorsey, 166 F.3d 558, 563 (3d Cir. 1999).

  In United States v. Rosado, 254 F. Supp.2d 316 (S.D.N.Y. 2003), a case that was before this Court, the defendant was convicted in state court and sentenced to an indeterminate term of imprisonment of two to four years. The defendant served only seven months of his sentence and was released to parole because he completed a "shock" incarceration program. He then pled guilty to a related narcotics conspiracy in federal court. This Court first analyzed § 5G 1.3(b) and determined that the defendant's state prison term was discharged, thus, § 5G 1.3(b) was inapplicable. However, the court then cited to § 5G 1.3, Application Note 4, which "explicitly permits a downward departure for just this circumstance" and credited the defendant for the state discharged term. The court reasoned that if the defendant had not completed the shock program he would likely have still been in jail and entitled to the application of § 5G 1.3, therefore, he "should not be punished for doing so well in jail that he was given early parole." Id. at 320

  **2.**  **The directive of 18 U.S.C. § 3553(a) that this Court avoid unwarranted sentence disparities among similarly situated defendants, strongly supports both the defendant's and the Government's recommendation that Mr. Dingle receive a sentence close to the 60 month sentence imposed upon Jose Aviles.**

Mr. Dingle contends that there are important similarities between him and other defendants - in particular, co-defendant Jose Aviles (Aviles) - which support the recommendation of both the Government and defendant that Mr. Dingle's should be sentenced in the range of 60 -63 months imprisonment. (The govt opposes a two year adjustment to any discharged state sentence for relevant conduct which results in an aggregate sentence below the mandatory minimum of 60 months imprisonment, pursuant to United States v. Lucas, supra.)

When comparing Mr. Dingle with Aviles, it is important to understand the history leading up to their respective plea agreements. (Attached as **Exhibits A and B** respectively, are the Government's sentencing memorandums for Mr. Dingle and Aviles)

Mr. Dingle's plea negotiations proceeded under the belief by all parties that he was not a Career Offender. Aviles' plea proceedings proceeded with the parties knowledge that he was a Career Offender.

The Government asserted that Mr. Dingle and Aviles were both "middle tier" defendants. More specifically, the Government asserted that both Mr. Dingle and Aviles were a street seller/manager. Moreover, the Government further asserted that Aviles was also involved in "storing large amounts of narcotics for a period of time."

Mr. Dingle and Aviles both stipulated in their plea agreements to the identical quantity of drugs (quantity of at least 100 grams of heroin and 28 grams of cocaine).

Yet, Mr. Dingle was required to plea to 21 U.S.C. 841(b)(1)(B), whereas Aviles was permitted to plead to 21 U.S.C. (B)(1)( C ).

It is telling that the Government's sentencing memorandum for Aviles states "The Government agreed to accept a plea without a mandatory minimum (a plea to 21 U.S.C. 841(b)(1)( C ) minimum sentence, but because of the defendant's (Aviles) role in the Organization, required him to stipulate in his plea agreement that he was involved in dealing heroin and crack cocaine at the drug weights specified at 21 U.S.C. 841(b)(1)(B), specifically at least 100 grams of heroin and 28 grams of cocaine."

It is clear that a motivation for the Government's willingness to accept a plea from Aviles to a 841(b)(1)( C ) offense [as versus a 841(b)(1)( B )] was because it enabled the parties to reach a plea agreement which was more palatable to Aviles. It is fair to assume that the Government decided that a plea to the (b)(1)( C ) - with a stipulated Career Offender Guidelines range of 151 - 188 months imprisonment - resulted in a sufficient Guideline Range, while at the same time avoiding an unnecessarily harsh and less justifiable Career Guideline Range of 188 -235 which would have resulted if he pled to a (b)(1)(B).[1]

---

[1] The Career Offender Guideline automatically places a qualifying defendant in CHC VI. If this automatic "step up" to CHC VI is not applied to their cases, Mr. Dingle's criminal history points would place him in CHC V, and based upon my discussions with the Government, Aviles' criminal history points place him in CHC IV.

On the other hand, proceeding under the belief that Mr. Dingle was not a Career Offender, the Government offered Mr. Dingle a plea to the (b)(1)(B) offense. Such a plea would secure a mandatory sentence of 60 months imprisonment. The sentencing memorandum clearly indicates they viewed such a sentence a sufficient and appropriate for Mr. Dingle.

Ultimately, the Government recommended that Aviles be sentenced to 151 - 188 months incarceration. (The Government also cited, as an additional reason for their recommendation, that Aviles had a visitor smuggle K2, a synthetic marijuana substance into the MCC). For Mr. Dingle, the Government sentencing memorandum - after recognizing the parties' error in not knowing that Mr. Dingle had been a Career Offender - recommends nevertheless that the Court sentence Mr. Dingle to 60 -63 months imprisonment (with no adjustment for time that Mr. Dingle has served in state prison for admittedly relevant conduct).[1]

A more detailed analysis of the predicate convictions which cause Mr. Dingle and Aviles to be classified as Career Offender further militates in favor of Mr. Dingle receiving a sentence approaching that of Aviles.

Both Mr. Dingle and Aviles qualify as Career Offenders because a parole violation for a prior conviction - which would have fallen outside the 15 year counting period - resulted in their release from incarceration within 15 years of their participation in the charged conspiracy.

However, there are very important differences between their respective prior convictions and the circumstances underlying their respective violations of parole which militate in favor of Mr. Dingle's position.

The two 1995 convictions which are the basis for Mr. Dingle's Career Offender classification were both non-violent drug sale offenses. Both of the offenses were essentially part of the same course of conduct because they occurred within a two week time span. The first involved a hand to hand sale of a small quantity of crack to an undercover officer and the second involved possession of a small amount of drugs with the intent to sell. Moreover, both cases were Mr. Dingle's first conflicts with the law, when Mr. Dingle was only 20 years old. Mr. Dingle was sentenced on the same date for these cases to 2 - 6 years imprisonment to run concurrently. PSR ¶¶ 50, 51.

However, in the case of Aviles , one of Aviles' two prior convictions which are the basis for his classification as a Career Offender was a 1992 conviction for the violent felony offense of Robbery in the First Degree (which requires the possession/use of a weapon during the commission of the robbery). Aviles was sentenced to 3- 9 years incarceration for this first conviction. Moreover, while still on parole for this robbery conviction, Aviles was convicted in

1999 for a drug selling offense, for which he was sentenced to 2 ½ to 5 years. His conviction for this second offense led to a parole violation determination and his classification as a Career Offender.

Thus, when comparing Mr. Dingle and Aviles, we see that Mr. Dingle was convicted of two non-violent street level drug offenses which were essentially one continuous course of conduct, and Mr. Dingle received a sentence of a minimum of 2 years imprisonment. Aviles was convicted first of a violent offense involving robbery with a weapon. Moreover, while on parole for the robbery conviction, Aviles violated his parole by his convicted for a drug selling offense. It should also be noted that Mr. Dingle received an aggregate sentence of 2 - 6 years imprisonment for his two prior convictions whereas Aviles received an aggregate sentence of 5 - 14 years for his two prior convictions.

Moreover, it is important to remember, when doing a comparison, to remember what Mr. Dingle discussed in his first sentencing memorandum. Mr. Dingle's violation of parole was based upon two specifications, one substantive offense and a second technical non-reporting violation. Mr. Dingle was subsequently acquitted of the substantive offense. Because of his acquittal of the substantive offense, we have asserted that Mr. Dingle's violation of parole thereby rests upon a remaining technical non-reporting specification and that such a circumstance works a great unfairness to Mr. Dingle. In the case of Aviles, he sustained a subsequent conviction after he voluntarily pled guilty to an unrelated drug offence, an offense which occurred while he was on parole for a robbery first degree conviction.

Accordingly, we respectfully submit that after a full consideration of all the facts in this case, there is ample support for the defendant's and the Government's recommendation that Mr. Dingle receive a sentence of 60 - 6 3months, which would be similar to the sentence of 60 months imposed upon Aviles.

## CONCLUSION

Based upon all of the above, we respectfully request: (1) that Court sentence Mr. Dingle to 60 months imprisonment, a sentence which would avoid unwarranted sentencing disparity in this case, and (2) that the Court find that Mr. Dingle's two term of imprisonment for relevant conduct remain undischarged and thereby grant him the relief required under U.S.S.G. §5G1.3.

In the alternative, if this Court imposes a sentence greater than the mandatory minimum of 60 months and also concludes that Mr. Dingle's state prison sentence is "discharged" within the meaning of §5G1.3(b); we respectfully request that this Court adjust the Mr. Dingle's federal

sentence (to the extent that it may exceed the mandatory minimum sentence of 60 months incarceration) by the two years he has served on his state prison sentence for relevant conduct, pursuant to U.S.S.G. §5G 1.3, Application Note 4 and § 5K2.23.

Respectfully submitted,

_____/s/_____
WINSTON LEE

## CERTIFICATE OF SERVICE

I certify that on May 21, I caused a copy of Defendant Haranakk's Supplemental Sentencing Memorandum and any attached Exhibits to be served on the Government by e-mail.

I certify under the penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: New York, New York.
May 21, 2015

                                          /s/
                                          WINSTON LEE, ESQ.
                                          20 Vesey Street, Suite 400
                                          New York, New York 10007
                                          (212)267-1911

                                          *Attorney for Defendant*
                                          *Haranakk Dingle*

EXHIBIT A



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

April 23, 2015

**BY ECF AND EMAIL**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      Re:    ***United States v. Haranakk Dingle*, 13 Cr. 242 (SAS)**

Dear Judge Scheindlin:

      The defendant is scheduled to be sentenced in this matter on April 27, 2015, at 4:30 p.m. For the reasons explained below, the Government respectfully submits that a sentence within the stipulated Guidelines range of 60 to 63 months' imprisonment should be imposed at sentencing.

### Background

      The defendant was one of approximately 30 targets of a joint investigation by the New York City Police Department and the Federal Bureau of Investigation into heroin and crack cocaine trafficking and violence by the Briggs Avenue Organization, a criminal organization that operated in the area of 194th Street and Briggs Avenue in the Bronx, New York. At this time, almost all of the targets of that investigation have pled guilty pursuant to plea agreements with the Government.

      The Government generally views each of the defendants in this case as fitting into one of three categories: (1) leader; (2) those with a more intermediate role, such as manager, high-level street seller, or someone responsible for storing large amounts of narcotics; or (3) low-level street seller. The Government made plea offers based on these classifications. The Government did not use role adjustments to distinguish defendants from each other, but rather used the various statutory penalty provisions based on drug weight set out in 21 U.S.C. § 841(b)(1) as a proxy for role in the Organization: leaders were given offers with the drug weight set out in Section 841(b)(1)(A); those who played a more intermediate role were given offers with the drug weight set out in Section 841(b)(1)(B); and low-level street sellers were given offers with a lower drug weight. Within these broad categories, the Government also considered a

defendant's criminal history, or lack thereof, and other mitigating or aggravating factors in deciding on an appropriate plea offer.

A table listing the sentences imposed on defendants to date is included below:

| Defendant | Sentence (months) | Guidelines Range (months) | Criminal History | Role |
|---|---|---|---|---|
| Mark Allie | 180 | 262 to 327 | VI | Leader |
| Edward Medrano | 75 | 151-188 (Career Offender) | VI | Street seller |
| Jonathan Mirabal | 65 | 70-87 (man. min.) | V | Street seller/stored drugs |
| Andre Cunningham | 63 | 70-87 (man. min.) | IV | Manager/stored drugs/street seller/possessed gun |
| Damon Grooms | 60 | 60-71 (man. min.) | III | Manager/stored drugs/street seller/possessed gun |
| Jose Aviles | 60 | 151-188 (Career Offender) | VI | Street seller/manager/stored drugs |
| Michael McDuffie | 42 | 57-71 | IV | Street seller |
| Jason Lewis | 36 | 63-78 | VI | Street seller |
| Robert Torres | 32 | 57-71 | IV | Street seller |
| Christian Fabre | 30 | 41-51 | II | Manager/stored drugs |
| Noel Feliciano | 30 | 41-51 | II | Street seller/manager |
| Robert Henderson | 27 | 46-57 | III | Higher-level street seller/manager |
| Darnell Hopkins | 27 | 46-57 | III | Street seller |
| Luis Guzman | 24 | 37-46 | I | Higher-level street seller |
| Zoa Briggs | 24 | 37-46 | III | Street seller |
| Jeffrey Gutierrez | 24 | 30-37 | I | Manager/street seller |
| Max Jordan | 21 | 37-46 | I | Street seller |
| Luz Figueroa | 15 | 37-46 | I | Delivered drugs and guns |
| Katherine Soriano | 12 | 24-30 | I | Delivered drugs and guns |

2

### The Court Should Impose a Sentence of 60 to 63 Months' Imprisonment

Pursuant to the defendant's plea agreement, the defendant's Guidelines offense level is 23 and his criminal History Category is II, resulting in a stipulated Guidelines rage of 60 to 63 months' imprisonment. The Government agrees that the PSR correctly determined that the defendant is a Career Offender, and thus that the correct Guidelines range is 188 to 235 months imprisonment.

The defendant, Haranakk Dingle, served as both a street seller and manager of the Briggs Avenue Organization. In the structure of the Organization, the Government places him in the middle tier of defendants. As a result, the defendant was required to plead to a drug conspiracy count with a five-year mandatory minimum sentence.

The defendant has a significant criminal history, including four felony drug convictions over the past 20 years (including convictions in 1995 and 2011), a federal fraud conviction in 2005, and resisting arrest convictions in 2002 and 2012 (one of which involved unlawfully entering a residence in an attempt to escape, and the other of which involved the defendant flailing his limbs to avoid being handcuffed), among other offenses. PSR ¶¶ 12-17. Despite those serious convictions, and the terms of incarceration that followed, the defendant was not deterred from future criminal conduct. The defendant is not a young man who simply made one or two poor decisions. He is 39 years old, and has made repeated deliberate decisions over his entire adult life to engage in criminal conduct. Indeed, while incarcerated for this offense, the defendant had three prison rule violations, including conducting a gambling pool and lying to prison authorities. There is a strong need for specific deterrence in this case.

Due to the defendant's role in the offense, his extensive criminal history, and the defendant's plea agreement, the Government respectfully submits that a sentence of 60 to 63 months' imprisonment would be sufficient, but not greater than necessary, to satisfy: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (2) the need to afford adequate deterrence to criminal conduct.

The Court should not, as the defendant urges, adjust the defendant's sentence to account for discharged state sentences for drug sales on two separate occasions in 2011, which the Government agrees is relevant conduct. First, the defendant's drug dealing activities continued *after* that relevant conduct. *See* PSR ¶ 62. Second, the defendant's other conduct—including serving as a regular street seller and manager who worked on many days apart from those on which he was arrested by state authorities—alone warrants a sentence of 60 to 63 months' imprisonment. To the extent the Court does elect to depart or vary downward, Second Circuit

law bars a sentence below the mandatory minimum term of incarceration of 60 months based on any discharged term of imprisonment. *See United States v. Lucas*, 745 F.3d 626, 630 n.5 (2d Cir. 2014).

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By: *[signature]*
        Jared Lenow
        Assistant United States Attorney
        (212) 637-1068

cc: Winston Lee, Esq. (by email)

EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

November 6, 2014

**BY ECF AND EMAIL**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

       Re:    *United States v. Jose Aviles*, 13 Cr. 242 (SAS)

Dear Judge Scheindlin:

      The defendant is scheduled to be sentenced in this matter on November 10, 2014, at 4:30 p.m. For the reasons explained below, the Government respectfully submits that a Guidelines Sentence be imposed at sentencing, which would result in a sentence of 151 to 188 months' imprisonment.

## Background

      The defendant was one of approximately 30 targets of a joint investigation by the New York City Police Department and the Federal Bureau of Investigation into heroin and crack cocaine trafficking and violence by the Briggs Avenue Organization, a criminal organization that operated in the area of 194th Street and Briggs Avenue in the Bronx, New York. At this time, almost all of the targets of that investigation have pled guilty pursuant to plea agreements with the Government.

      The Government generally views each of the defendants in this case as fitting into one of three categories: (1) leader; (2) those with a more intermediate role, such as manager, high-level street seller, or someone responsible for storing large amounts of narcotics; or (3) low-level street seller. The Government made plea offers based on these classifications. The Government did not use role adjustments to distinguish defendants from each other, but rather used the various statutory penalty provisions based on drug weight set out in 21 U.S.C. § 841(b)(1) as a proxy for role in the Organization: leaders were given offers with the drug weight set out in Section 841(b)(1)(A); those who played a more intermediate role were given offers with the drug weight set out in Section 841(b)(1)(B); and low-level street sellers were given offers with a

lower drug weight. Within these broad categories, the Government also considered a defendant's criminal history, or lack thereof, and other mitigating or aggravating factors in deciding on an appropriate plea offer.

### The Defendant's Conduct

The defendant, Jose Aviles, was a street seller of heroin and crack cocaine, and he also served as a manager and "runner" who stored large amounts of narcotics for a period of time during the conspiracy. He was involved in the Organization from at least 2011 through 2012. In the structure of the Organization, the Government places him in the middle-tier of defendants. The Government agreed to accept a plea without a mandatory minimum sentence, but, because of the defendant's role in the Organization, required him to stipulate in his plea agreement that he was involved in dealing heroin and crack cocaine at the drug weights specified at 21 U.S.C. § 841(b)(1)(B), specifically at least 100 grams of heroin, and at least 28 grams of crack cocaine.

Pursuant to the defendant's plea agreement, the defendant's Guidelines offense level is 29 and his criminal History Category is VI because he is a career offender, resulting in a stipulated Guidelines rage of 151 to 188 months' imprisonment. In light of the substantial amount of heroin and crack cocaine sold by the Organization, the defendant's role, his serious criminal history (including the 1992 violent felony conviction and 1999 narcotics felony conviction that result in his career offender status), and the recent disciplinary infraction noted in the PSR (in which the defendant appears to have sought to have a visitor smuggle K2, a synthetic marijuana substance, into the MCC), which demonstrates the acute need for a sentence with sufficient specific deterrence with respect to this defendant, the Government respectfully submits that a sentence of 151 to 188 months' imprisonment is appropriate here, and would be sufficient, but not greater than necessary, to satisfy: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (2) the need to afford adequate deterrence to criminal conduct.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Jared Lenow/Jessica Masella
Assistant United States Attorneys
(212) 637-1068/2288

cc: Matthew J. Kluger, Esq. (by email)